IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO. 5:07-CV-452-FL

PEGGY R. JONES,                              )
                                             )
    Plaintiff/Claimant,                      )
                                             )
        v.                                   )      **MEMORANDUM AND**
                                             )      **RECOMMENDATION**
MICHAEL J. ASTRUE, Commissioner              )
of Social Security,                          )
                                             )
    Defendant.                               )

This matter is before the Court on the parties' cross motions for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). Claimant Peggy R. Jones ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). Claimant responded to Defendant's motion and the time for filing a reply has expired. Accordingly, the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this Court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant filed an application for DIB payments on 20 July 2004, alleging disability beginning 21 May 2004. (R. 49-51). Her claim was denied initially and upon reconsideration. (R. 25-30, 33-37). A hearing before the Administrative Law Judge ("ALJ") was held on 17 November 2006, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 409-43). On 21 December 2006, the ALJ issued a decision denying

Claimant's claim. (R. 12-23). Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 11), and submitted additional evidence as part of her request (R. 404-08). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on 3 May 2007. (R. 6-9). Claimant then filed a complaint in this Court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

In its consideration of a final agency determination, this Court is to remain mindful of the standard by which it reviews the administrative decision. *See e.g., Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 320-21 (4th Cir. 2008) (citations omitted) (explaining standards of review are an expression of judicial restraint safeguarding the "superior vantage points of those entrusted with primary decisional responsibility"). With respect to the judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, review is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner...as to any fact, if supported by substantial evidence, shall be conclusive..." 42 U.S.C. § 405(g) (2007). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla...and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting

2

evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

The claimant (1) must not be engaged in "substantial gainful activity," *i.e.*, currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform...past work or (5) any other work.

*Albright v. Commissioner of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The

3

ALJ is required to incorporate pertinent findings and conclusions based on the technique into his written decision. *Id.* § 404.1520a(e)(2).

## FACTUAL HISTORY

### I. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following combination of severe impairments: (1) degenerative disc disease of the neck; (2) pulmonary hypertension; (3) depression; (4) sleep apnea; (5) fibromyalgia; (6) history of irritable bowel syndrome and (7) bladder leakage. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* In reviewing Claimant's alleged mental impairment and applying the technique prescribed by the regulations, the ALJ found as follows:

> "[C]laimant does not have a mental impairment described in the 'Part A' criteria of Section 12.04 of the Listing of Impairments. Specifically,...[C]laimant has depression but the signs and symptoms are not medically documented as to persistence. Regarding the 'Part B' criteria of Section 12.04, ...[C]laimant has not had any marked restrictions or difficulties or episodes of decompensation.... Moreover, there is no evidence to establish the presence of the 'C' criteria.

(R. 18, 22).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work,[1] sit, walk or stand six hours of an eight hour day and perform

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the

4

simple, repetitive, routine tasks that require low production but that Claimant should avoid climbing stairs and requires ready access to the bathroom. (R. 18). In making this assessment, the ALJ found Claimant's statements about her limitations not fully credible based upon the medical evidence. (R. 20-21). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a bank teller. (R. 22). Nonetheless, at step five, up on considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy, such as photocopy operator, mail clerk and office helper. (R. 23).

## II. Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was fifty years old and unemployed. (R. 413, 438). Claimant is a high school graduate with some community college experience and has worked as a bank teller for over fifteen years. (R. 414-15).

Claimant stated she is unable to perform her past work due to pulmonary hypertension, fibromyalgia, back pain, fatigue, migraines, memory lapses, arthritis, GERD, asthma, bladder and bowel incontinence and Meniere's disease, and explained "exhaustion" and "brain fog" are conditions affecting her the most. (R. 416-17, 419, 422, 437). Claimant takes numerous prescribed medications for the above conditions and suffers from various side effects as result. (R. 435). For example, the asthma medications increase her heart beat and make her shake, the

---

time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

fluid pills, taken for Meniere's disease, cause fatigue, and her anemia and arthritis medications cause nausea. (R. 422). Claimant explained that she does not use a CPAP machine as prescribed by her physician, because she feels like it is smothering her. (R. 422).

With respect to pulmonary hypertension, it is believed the origin of this condition was the result of taking diet pills. (R. 434). Diagnosed prior to ceasing work as a teller, Claimant explained pulmonary hypertension primarily affects her energy level and causes shortness of breath. (R. 418). As a result, Claimant must nap at least twice each day for approximately one to one and half hours. (R. 418). Claimant testified that a physician advised her not to lift over six pounds as a result of this condition (R. 416); however, concerned about her heart, the physician encouraged her to increase her activity. (R. 419). Claimant attempted to exercise as advised by walking on a treadmill; however, she was unable to exercise for long due to back pain. (R. 419). As a result of back pain, Claimant explained she must sit in a chair for a while each morning before she is capable of standing and stated further that on some mornings, she is "crippled over" due to back pain. (R. 419). Claimant testified that she is never free from pain. (R. 419).

Claimant's primary care physician diagnosed Claimant with depression and advised Claimant to visit a psychotherapist. (R. 423). While discussing her depression with her minister on occasion, Claimant stated she has failed to seek counseling, because "it's hard for [her] to get up the initiative to go and do extra things." (R. 423). With respect to her memory condition, Claimant described her mind as "foggy" and explained her "brain freezes." (R. 424, 428). As a result of these symptoms, she is incapable of engaging in a conversation without getting words mixed up or forgetting the point of the conversation, and she claims further an inability to

6

comprehend. (R. 428, 437). Claimant stated her primary care physician advised Claimant to attend a memory clinic; however, Claimant admitted that she has not yet attended the clinic. (R. 424) Claimant testified that her physicians attribute her mental problems to various conditions, including depression, fibromyalgia, pulmonary hypertension and Meniere's disease. (R. 437-38). As a result of Meniere's disease, Claimant experiences dizziness and nausea and is unable to tolerate noises. (R. 422-23).

Claimant testified to experiencing daily and nightly bouts of both bladder and bowel incontinence. (R. 419-20). Claimant has accidents during the day and frequently at night; she wears undergarment pads that must be changed up to three times daily. (R. 420). Claimant stated that her need to use the restroom is accompanied by no warning, and as a result, she limits her public outings. (R. 420-21).

As for daily activities, Claimant usually has coffee and reads the Bible and newspaper. (R. 425). Claimant occasionally prepares breakfast, but rarely cooks dinner due to exhaustion, preferring to eat out or purchasing take-out from a fast food restaurant. (R. 427). Claimant washes dishes and does the laundry but relies on her sister to complete the heavy household chores, which includes vacuuming. (R. 425). With the assistance of her sister and nieces, Claimant cares for her grandson on Tuesdays and Fridays for a period of three or four hours. (R. 430-31). Claimant drives an automobile approximately ten miles per week to places such as the post office, church, grocery store and restaurants - all located within a block of her home. (R. 427).

7

## III.    Vocational Expert's Testimony at the Administrative Hearing

Kimberly Engler testified as a VE at the administrative hearing. (R. 439-42). After the

VE's testimony regarding Claimant's past work experience (R. 441), the ALJ posed the following

hypothetical:

> [A]ssume initially a hypothetical person of the same age, education and past work of [Claimant], and...further assume this hypothetical individual was confined to light work with the additional limitations that she should avoid stairs, and...that her work would have to be in the realm of simple repetitive tasks in a low stress environment. Based on that...profile, would there be jobs...that a person could perform?

(R. 441).    The VE responded the individual could perform the following light, unskilled

positions and provided DOT classification citations along with the number of jobs available in

the local and national economies: (1) photo copy operator - DOT 207.685-014, 800 locally,

40,000 nationally; (2) mail clerk - DOT 209.687-026, 1,000 locally, 50,000 nationally; and (3)

office helper - DOT 239.567-010, 2,000 locally, 150,000 nationally.  *Id.*  The ALJ confirmed

that the above jobs were "indoor jobs" with "access to a restroom." (R. 442). The VE testified

further that if the hypothetical individual could only stand and walk on an occasional basis, then

the above jobs would not be available. (R. 441-42). Finally, the ALJ asked,

> [I]f I were to assume that [Claimant]'s testimony has been credible and she has all the impairments to which she has testified, for example, she indicated that she was told she shouldn't lift more than six pounds, she reported that she has to lie down due to fatigue during the day, based on her testimony, would there be jobs.

(R. 442). The VE responded in the negative.  *Id.*

## DISCUSSION

In this case, Claimant alleges the following errors by the ALJ: (1) failure to make a severity finding regarding Claimant's lumbar disc disease;[2] (2) failure to consider whether Claimant's impairments in combination are equivalent to a listed impairment; (3) improper RFC determination; (4) erroneous assessment of Claimant's credibility; (5) failure to pose a hypothetical that adequately reflected Claimant's RFC; and (6) failure to resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT"). Pl.'s Mem. in Supp. of Pl.'s Mot. for J. on the Pleadings at 2. ("Pl.'s Mem.").

While not discussed directly by the parties, before addressing the assignments of error, the Court must consider the additional evidence submitted to and incorporated by the Appeals Council into the administrative record (R. 6-7, 9), which was not available to the ALJ in making his decision. *See Wilkins v. Sec'y, Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (explaining where the Appeals Council incorporates additional evidence into the administrative record, the reviewing court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [ALJ's] findings"). In particular, the Court must evaluate if this later-submitted evidence would affect the ALJ's determination. *See King v. Barnhart*, 415 F. Supp. 2d 607, 613 (E.D.N.C. 2005); *see also Daniels v. Astrue*, __ F. Supp. 2d __, 2008 WL 2656213, at *2 (E.D.N.C. June 27, 2008) (explaining additional evidence incorporated into the record "must be considered in a determination of whether the [ALJ's] decision was supported by substantial evidence.").

---

[2] Claimant discusses this allegation within her step three argument. However, this allegation implicates step two of the sequential evaluation process; thus, the Court addresses it accordingly.

9

## I. The additional evidence submitted to the Appeals Council is not material.

The Appeals Council must consider additional evidence if (1) the evidence is new; i.e., not duplicative or cumulative of that which is already in the record; (2) the evidence is material; i.e., there exists a reasonable possibility that the new evidence would have changed the outcome; and (3) the evidence "relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also Wilkins*, 953 F.2d at 96 (citations omitted). In this case, the relevant time period extends from 21 May 2004 (Claimant's alleged disability onset date) to 21 December 2006 (the date of the ALJ's decision). (R. 12-23, 49-51). The fact that the additional evidence was generated after the ALJ's decision does not automatically disqualify it from consideration. However, the claimant must do more than simply submit medical records which postdate the hearing since the subsequently-generated records, standing alone, are insufficient to satisfy the materiality requirement. *See* 20 C.F.R. §§ 404.970(b), 416.1470(b). In particular, the claimant must show how the new evidence relates to the claimant's medical condition as it was at the time of the hearing. *Id.*; *see also Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990) (explaining medical evidence obtained after an ALJ decision is material if it relates to the claimant's condition on or before the date of the ALJ's decision). However, if the new evidence shows merely that the claimant's condition deteriorated after the administrative hearing, the evidence is not relevant to the claimant's condition during the time at issue. *See Rhodes v. Barnhart*, 2005 U.S. Dist. LEXIS 42876, at *33-34 (W.D.N.C. Mar. 30, 2005), *aff'd*, 176 Fed. Appx. 419 (4th Cir. Apr. 20, 2006) (new evidence must relate to the time period for which benefits were denied and may not merely be evidence of a later-acquired disability or of

10

subsequent deterioration of the previously non-disabling condition) (citing *Raglin v. Massanari*, 39 Fed. Appx. 777, 779 (3d Cir. 2002)).

The Appeals Council incorporated the following additional evidence into the record: (1) a letter dated 22 February 2007 from Aroona Zaeem, a certified physician assistant with Orthopaedic Specialists of North Carolina, outlining Claimant's illnesses and concluding Claimant is unable to perform work of any kind (R. 405-06); (2) a letter dated 1 February 2007 from Anita Blosser, M.D., Claimant's family physician, (a) expressing puzzlement that Claimant's mental symptoms were discounted due to only receiving treatment from a family physician; (b) noting the intense training received by family physicians to handle depression and anxiety disorders; (c) explaining no psychiatrist is in Claimant's vicinity; (d) noting most psychiatrists no longer accept private insurance as a result of meager reimbursement and Claimant cannot afford to pay the going fee for psychiatric care; and (e) explaining her opinion that Claimant suffers from a personality disorder and providing reasons for said opinion (R. 407); and (3) a letter dated 30 January 2007 from Victor Tapson, M.D., Claimant's pulmonolgist, (a) outlining Claimant's numerous medical impairments; (b) explaining Claimant's pulmonary hypertension increases significantly with exercise; and (c) expressing his opinion that Claimant is capable of work but should be limited to lifting no more than ten pounds of weight, should not exert herself significantly and should avoid prolonged squatting (R. 408).

With respect to the letter from Mr. Zaeem, this evidence is not material. While Mr. Zaeem is neither a medical expert nor an "acceptable medical source," *see* 20 C.F.R. § 416.913(a), as a physician assistant, his opinion "may provide insight into the severity of Claimant's impairment and how it affects Claimant's ability to function." Soc. Sec. Rul.

11

("S.S.R.") 06-03p, 2006 WL 2329939, at *2; *see also* 20 C.F.R. § 416.913(d)(1) (defining "other sources" as including all other medical sources not listed as "acceptable medical sources," including, for example, physician assistants). However, Mr. Zaeem cites no records indicating his treatment of Claimant. In fact, Mr. Zaeem states only that Claimant was seen by Dr. Deol in 2006 and then provides the results of the 2006 MRI cited in the ALJ's opinion. (R. 19, 405). Furthermore, Mr. Zaeem summarizes Claimant other impairments unrelated to her orthopaedic treatment, which are presumably outside of his scope of expertise. Moreover, no medical records are cited to corroborate his medical summaries or conclusion that Claimant is incapable of performing any work. (R. 405-06); *see Craig*, 76 F.3d at 590 (stating a medical opinion should be accorded significantly less weight if it is not supported by clinical evidence); *see also* 20 C.F.R. 404.1527(d)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

With respect to Dr. Blosser's February 2007 letter, the Court finds it is immaterial as it would not have changed the outcome of the ALJ's decision. In particular, there is no evidence that the ALJ discounted Claimant's symptoms of depression because she was treated by her family physician. Rather, the ALJ concluded that Claimant suffers from depression, relying in part on a state agency consultant's determination that Claimant suffered "major depressive disorder, recurrent, mild without psychotic features." (R. 21, 290). Furthermore, Dr. Blosser does not cite any treatment notes documenting evidence that Claimant may suffer from a personality disorder. (R. 407). Finally, Dr. Tapson's opinion that Claimant is capable of work

but should be limited to lifting no more than ten pounds and should avoid walking up several flights of stairs and prolonged squatting mirrors the ALJ's RFC determination. (R. 18, 408).

## II.     The ALJ's failure to classify Claimant's back pain as a severe impairment is not reversible error.

Claimant argues that the ALJ erred in the second step of the sequential evaluation process by failing to make an express determination regarding the severity or non-severity of Claimant's lower back pain and implies that this failure is reversible error. Pl.'s Mem. at 11. This Court disagrees.

At step two, an ALJ must determine whether a claimant's impairment(s), individually or in combination, are "severe." 20 C.F.R. § 404.1523. As long as a claimant has any severe impairment or combination of impairments, the ALJ must proceed beyond step two and consider all of the impairments (including non-severe impairments) at the remaining steps of the sequential evaluation process, which in this case, was done. *See* 20 C.F.R. § 404.1523; *see also* S.S.R. 96-8p, 1996 WL 374184, at *5 (July 2, 1996) (explaining when an ALJ determines that one or more impairments is severe, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'"). In particular, the ALJ thoroughly discussed the evidence relating to all of Claimant's impairments, including two MRI scans of Claimant's lumbar spine, and took the combination of Claimant's impairments into account in determining her RFC. (R. 17, 18 ¶6, 19 ¶5); *see Newsome v. Barnhart*, 444 F. Supp. 2d 1195, 1200-01 (M.D. Ala. 2006) (where the ALJ did not specifically address the claimant's diagnosis of Oppositional Defiant Disorder ("ODD") and did not make a finding as to whether ODD constituted a severe impairment, the court nonetheless affirmed the ALJ's decision because the ALJ "did consider and discuss the underlying evidence relating to [claimant's] ODD"); *see*

13

*also Ottman v. Barnhart*, 306 F. Supp. 2d 829, 839 (N.D. Ind. 2004) (no error in ALJ failing to determine whether anxiety and pain disorders were "severe" at step two if evidence of disorders was considered in reaching conclusion at step five); *see also Mariarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987) (holding failure to find that an impairment severe was harmless error where other impairments were deemed severe). Accordingly, because the ALJ did not end his analysis at step two, but continued with the remaining steps in his disability determination, the ALJ's failure to set forth a specific finding as to the severity or non-severity of Claimant's back impairment does not constitute reversible error.

## III. The ALJ properly considered whether Claimant's impairments in combination meet or equal a Listing.

Claimant argues that the ALJ failed to consider whether her impairments are severe enough to equal the requirements of Listing 1.04 (disorders of the spine), and in particular Listing 1.04A. Pl.'s Mem. at 10. While Claimant raises this issue within her RFC argument, this issue implicates step three of the sequential evaluation process and the Court will therefore analyze it accordingly.

To be disabled under the Listings, the claimant may present evidence either that the impairment meets or is "medically equivalent" to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir.1986); *see also* 20 C.F.R. § 404.1526. "For a claimant to qualify for benefits by showing that h[er]...combination of impairments is 'equivalent' to a listed impairment, [s]he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "The [ALJ]...is responsible for deciding...whether a [L]isting is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3. In order to determine whether a medical impairment equals a Listing, the ALJ is bound to

14

"consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding.... [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c).

Despite Claimant's contention to the contrary, in making his step-three finding, the ALJ concluded the medical evidence did not support a finding that Claimant's condition met or equaled the criteria of a Listing, including Listing 1.04A. (R. 17). Listing 1.04 refers generally to disorders of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord. *See* C.F.R. § 404, Subpt. P., App. 1, § 1.04. Under Listing 1.04A, a claimant must produce evidence of nerve root compression characterized by the following clinical findings: (1) neuro-anatomic distribution of pain, (2) limitation of motion of the spine, (3) motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, (4) positive straight-leg raising test (sitting and supine). *Id.* § 1.04A.

Citing clinical reports of her degenerative disc disease of the cervical spine and conceding the "reports may not meet the requirements of Listing 1.04A," Claimant contends "when combined with her other impairments, the resulting limitation *may* be medically equal to Listing 1.04A." Pl.'s Mem. at 10-11 (emphasis added). In particular, Claimant cites the following evidence: (1) a 2003 MRI scan of the cervical spine which indicated degenerative disc changes with posterior disc herniation and posterior osteophytes resulting in indentation of the anterior left surface of the cervical cord (R. 226), (2) notations by Anita Blosser, M.D., Claimant's family physician, wherein Claimant stated she is unable to carry groceries (R. 152)

15

and complained that her "fingers fall asleep in recliner" (R. 344), (3) a state agency consultant's finding that Claimant experiences pain upon forward flexion of the cervical spine (R. 170), (4) two MRI scans of Claimant's lumbar spine (R. 227, 341-42); and (4) a December 2003 physical examination wherein Claimant exhibited limited lumbar mobility, pain with lumbar rotation and positive straight leg raises (R. 222). *Id.*

However, Claimant has not explained adequately how any of this evidence shows findings that are at least of equal medical significance to the required criteria of Listing 1.04A. Moreover, with the exception of the notations by Dr. Blosser cited above, the ALJ explicitly referenced the evidence relied upon by Claimant. (R. 17-19). Finally, the failure of Claimant to satisfy all of the criteria of Listing 1.04A is also evident, as the ALJ noted in his decision (R. 21), from the judgments of the state agency physicians concerning the nature and severity of the Claimant's condition (R. 164-70, 248-55, 297-98).

Based on the foregoing, it is evident that the ALJ did not arbitrarily make an independent determination as to whether Claimant's combination of impairments equaled a Listing. Rather, the ALJ's opinion as a whole indicates that he considered the appropriate evidence and factors in determining that Claimant's impairments in combination did not equal a Listing. Accordingly, Claimant's argument as to this issue is without merit.

## IV.    The ALJ properly considered the cumulative effect of Claimant's impairments on her ability to work.

Claimant contends the ALJ failed to evaluate the cumulative effect of her impairments, including her obesity and lumbar disc disease, on her ability to work. *See* Pl.'s Mem. at 9. This Court disagrees.

16

An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his or her physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1. The RFC assessment is based on all the relevant medical and other evidence in the case record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see also Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.").

Claimant provided limited discussion in support of this issue, citing only the regulation and corresponding social security ruling which explain that the ALJ must consider all impairments, severe and nonsevere, in assessing a claimant's RFC. *See* Pl.'s Mem. at 9 (citing 20 C.F.R. § 404.1545(e), S.S.R. 96-8p, 1996 WL 374184). The remaining analysis raises the step two and step three issues discussed above. However, contrary to Claimant's assertion, the ALJ summarized Claimant's medical records as to each impairment, including Claimant's obesity and lumbar disc disease. (R. 17, 18 ¶6, 19 ¶¶5-6, 20 ¶1); *see Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) ("Sufficient consideration of the combined effects of a [claimant's] impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a [claimant's] complaints of pain and level of daily activities." (citations omitted), *aff'd* 179 Fed. Appx. 167 (4th Cir. 2006 ) (unpublished per curiam). Moreover, the ALJ's

decision indicates that he considered all of Claimant's mental and physical limitations together before determining Claimant maintained the RFC to perform light work. In addition, the RFC assessment takes account of Claimant's testimony concerning pain to the extent that this testimony was consistent with the objective medical evidence before the ALJ. *See Hines*, 453 F.3d at 565 (noting the ALJ need not accept Claimant's subjective evidence to the extent it is inconsistent with the available evidence). Finally, the ALJ's review of Claimant's medical impairments also includes substantive findings by DDS consultants, and given the lack of evidence contradicting those findings, the ALJ properly relied on these medical opinions in determining Claimant's work-related capacity. (R. 21, 164-70, 248-55, 293-95, 297-98).

Based on the foregoing, this Court finds that the ALJ's RFC determination is supported by substantial evidence. The ALJ analyzed all of the relevant evidence, sufficiently explained his findings and his rationale in crediting the evidence and applied the correct legal standards in evaluating Claimant's RFC. Accordingly, Claimant's argument as to this issue is without merit.

## V.   The ALJ properly assessed Claimant's credibility and did not require the presence of objective medical evidence of pain.

Claimant argues that the ALJ improperly evaluated her credibility, and in particular, her testimony concerning the disabling effects of her pain. Pl.'s Mem. at 15. This Court disagrees.

Upon establishing the existence of a medically-determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptom(s), the ALJ must evaluate the intensity, persistence and limiting effects of said symptom(s) on a claimant's ability to perform basic work. 20 C.F.R. § 404.1529(c)(1); S.S.R. 96-7p, 1996 WL 374186, at *1; *see Craig*, 76 F.3d at 595. This evaluation requires the ALJ to determine the degree to which the claimant's statements regarding symptoms and their functional effects can be believed and

accepted as true; thus, the ALJ must consider conflicts between the claimant's statements and the rest of the evidence. 20 C.F.R. § 404.1529(c)(4); S.S.R. 96-7p, 1996 WL 374186, at *4. A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. § 404.1529(c)(4). In assessing credibility, the ALJ must consider the entire case record, provide specific reasons for the credibility finding and ensure the weight accorded (and reasoning for said weight) to the claimant's statements is evident to the claimant and any subsequent reviewers. S.S.R. 96-7p, 1996 WL 374186, at *4; *see Ketcher v. Apfel*, 68 F. Supp. 2d 629, 652 (D. Md. 1999); *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). In addition to the objective medical evidence, the ALJ's evaluation of a claimant's credibility must include the following factors:

(1)     effect of symptoms on claimant's daily activities
(2)     location, duration, frequency and intensity of the symptom(s)
(3)     factors that precipitate or aggravate claimant's symptoms
(4)     type, dosage, effectiveness and side effects of medication taken to alleviate the symptom(s)
(5)     non-medical treatment received for relief of the symptom(s)
(6)     any non-treatment measures used to relieve the symptom(s)
(7)     other factors concerning functional limitations and restrictions due to the symptoms.

20 C.F.R. § 404.1529(c)(3); S.S.R. 96-7p, 1996 WL 374186, at *3; *see Hyatt v. Heckler*, 711 F. Supp. 837, 848 (W.D.N.C. 1989), *aff'd in part, amended in part, vacated in part*, 899 F.2d 329 (4th Cir. 1990).

After reviewing the ALJ's decision, this Court finds the ALJ made the necessary findings in support of his credibility determination pursuant to the framework explained above. *See Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (an ALJ's observations regarding

19

credibility should be given great weight). As discussed previously, the ALJ summarized Claimant's medical records as to each impairment and noted the findings on clinical and diagnostic testing. (R. 18-20, 120, 221-27, 331-32, 340-42, 382, 395, 398).

In addition to the objective medical evidence, the ALJ also considered the factors set forth in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) as referenced above. *See* S.S.R. 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the [ALJ] must consider in assessing an individual's credibility and must be considered in the context of all the evidence."). In particular, the ALJ's decision cites the following evidence in evaluating Claimant's credibility: (1) Claimant's activities of daily living which include reading, light cleaning and limited cooking; (2) Claimant's shortness of breath, low back pain, fatigue, forgetfulness, concentration difficulties and due to incontinence, her need to wear pads and to keep a change of clothing on hand; (3) Claimant's allegation that sitting for lengthy periods aggravates her back pain; (4) Claimant's use of numerous medications (eighteen in all) and the resulting side effects from these medications, such as increased heartbeat, shaking, fatigue, nausea; and (5) Claimant's refusal to use her CPAP machine because it makes her feel like she is suffocating and her refusal of an epidural steroid injection. (R. 20-21).

Upon citing the above evidence, the ALJ provided the following reasons for finding Claimant's complaints of pain not fully persuasive: (1) lack of medical evidence supporting treatment for fibromyalgia and back pain post-2003, including complaints of severe pain to Claimant's primary care physician; (2) lack of medical evidence documenting treatment for incontinence post November-2003; (3) Claimant's failure to take a significant step towards her

20

own well-being as evidenced by her failure to lose weight and to use her CPAP machine despite complaints of "extreme fatigue and tiredness;" and (4) Claimant's ability to recite from memory her extensive list of medications during her psychological evaluation. (R. 21). Claimant alleges, however, that these reasons are based on an inaccurate reading of the record. See Pl.'s Mem. at 16. Upon review of the evidence, this Court finds the ALJ's credibility analysis is supported by substantial evidence.

### a. *Medical evidence as to Claimant's back pain and fibromyalgia*

In support of Claimant's argument that the ALJ is mistaken in regard to her treatment of her back post-2003, Claimant cites the following records: (1) Dr. Blosser's March 2004 impression that Claimant suffered from degenerative disc disease (R. 145); (2) May 2005 notation by a physician with the Pulmonary Vascular Disease Clinic noting Claimant's poor performance during the six-minute walk test due to alleged back pain (R. 385); (3) July 2005 notation by Claimant's pulmonologist noting Claimant's complaints of pain in her back, hips and legs (R. 338) (4) a February 2006 MRI scan denoting Clifford Wheeless, M.D., as the referring physician (R. 340); (5) notations by Dr. Blosser during an April 2006 visit regarding the February MRI and Claimant's complaint that she is short of breath[3] with minimal exertion (R. 344); and (6) a February 2007 letter by Aroona Zaeem, P.A. explaining Claimant has been seen in his office for neck and low back pain in 2006 and citing the 2006 MRI mentioned above (R. 405-06). *See* Pl.'s Mem. at 17-18.

Upon review of the evidence, the Court finds that the ALJ's conclusion as to Claimant's back pain is supported by substantial evidence. Despite Claimant's contention to the contrary,

---

[3] Claimant erroneously cites the April 2006 medical record for the proposition that Claimant was "sore with just minimal exertion." *See* Pl.'s Mem. at 18.

the ALJ referred specifically to the February 2006 MRI findings and acknowledged that Claimant's May 2005 walk distance was shortened by back discomfort. (R. 19). Moreover, while the treatment records document Claimant's complaints of back pain to various physicians, the records do not provide limitations resulting therefrom. Finally, as described in detail above, Mr. Zaeem's letter is accorded little weight as he cites no evidence corroborating his summary of Claimant's back impairments with the exception of the 2006 MRI. (R. 405-06).

With respect to medical documentation of Claimant's fibromyalgia post-2003, Claimant cites the following evidence: (1) Dr. Blosser's March 2004 impression that Claimant suffered from fibromyalgia (R. 145); (2) a state agency consultant's finding that Claimant suffered from "fibromyalgia, persistent symptoms. Prognosis: Fair" dated 21 September 2004 (R. 169); (3) February 2005 handwritten treatment note by Dr. Blosser describing Claimant's "brain function concerns" and in particular, her complaints of loss of memory and forgetfulness (R. 266); (4) a July 2006 treatment note by Terry Fortin, M.D., a pulmonologist, wherein Claimant was advised to remain as active as possible despite her arthritic pain and fibromyalgia (R. 398); and (5) a February 2007 letter by Mr. Zaeem explaining Claimant has a "history of fibromyalgia [and] is seeing Dr. Wilson for that pain" (R. 405-06). *See* Pl.'s Mem. at 18; Pl.'s Reply to Mem. in Supp. of Def.'s Mot. for J. on the Pleadings at 2 ("Pl.'s Reply").

Upon review of the above evidence, the Court finds it does not support Claimant's contention. First, much of the evidence was cited in the ALJ's decision. For example, the ALJ specifically referenced Dr. Blosser's February 2005 notation wherein she denoted Claimant's "number one concern was brain function." (R. 19 ¶2). Moreover, the treatment note contains no mention of fibromyalgia. Rather, it indicates that Dr. Blosser increased Claimant's Prozac

22

dosage as Claimant's complaints suggested depressive disorder. (R. 266). The ALJ also acknowledged that Dr. Fortin encouraged Claimant to be more active. (R. 20 ¶1). Second, in determining Claimant's RFC, the ALJ accorded substantial weight to the findings of the state agency physicians. (R. 21). Finally, as described in detail above, Mr. Zaeem's letter merely states that Claimant has a history of fibromyalgia, a fact not in dispute, and provides no medical evidence supporting his opinion that Claimant's fibromyalgia prevents Claimant from working. (R. 405-06); *cf. Stup v. UNUM Life Ins. Co. of Am.*, 390 F.3d 301, 303 (4th Cir. 2004) (claimant found disabled where claimant's rheumatologist reported that claimant's fibromyalgia and its resulting symptoms prevented claimant from "'being able to perform normal daily activities' or 'remember simple directions.'"); *Stewart v. Apfel*, 245 F.3d 793 (11th Cir. 2000) (claimant found disabled where claimant's treating physician "outlined the signs and symptoms supporting his diagnosis of fibromyalgia and disability").

### b. *Medical evidence as to Claimant's incontinence*

In response to the ALJ's remark that one would expect more recent treatment records regarding incontinence given the complaints of Claimant during her testimony, Claimant relies on the following medical documentation: (1) an October 2003 treatment note by Chrystie Timmons, M.D., Claimant's gynecologist advising surgery should be avoided and recommending pelvic floor biofeedback therapy (R. 313) and (2) Dr. Blosser's December 2003 impression that Claimant suffers from urinary incontinence (R. 147). Pl.'s Mem. at 18. However, the issue is not whether Claimant's urinary incontinence is a severe impairment, but rather whether Claimant endures incontinence to the degree to which she has testified. The above evidence does not contradict the ALJ's finding that Claimant's testimony regarding her incontinence was not fully

23

credible given the lack of medical treatment for incontinence by Dr. Timmons post-November 2003. This finding is further supported by Dr. Timmons November 2004 notation that Claimant "did not desire" biofeedback therapy. (R. 244).

Claimant avers further that the ALJ should have considered Claimant's embarrassment as justification for "any failure to be more forthcoming about her complaints of incontinence." *See id.* at 19 (citing S.S.R. 96-7p, 1996 WL 374186). Frequent medical visits "generally lend support to an individual's allegations of intense and persistence symptoms." S.S.R. 96-7p, 1996 WL 374186, at *7. In contrast, however,

> [An] individual's statements may be less credible if...records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Id.* The ALJ acknowledged Claimant's fear of public outings as a result of her incontinence and her need to have an extra change of clothing available when she did go out. (R. 20). Moreover, this Court is not persuaded that "embarrassment" regarding a medical condition constitutes an acceptable justification for failure to pursue medical treatment. *Cf. id.* (providing examples such as an inability to afford medication or inability to take prescription medication due to intolerable side-effects).

c. *Claimant's failure to take a significant step towards her own well-being*

In finding Claimant's complaints of "fatigue and tiredness" not fully persuasive, the ALJ relied on Claimant's failure to use her CPAP machine as prescribed and her failure to lose weight. (R. 21). Claimant maintains, however, that the ALJ failed to consider Claimant's

24

claustrophobia, her financial concerns, a physician's remark that weight loss would have no impact on Claimant's pulmonary hypertension and Claimant's anemia. First, with respect to claustrophobia, the ALJ specifically mentioned the September 2005 medical report by Ambrose Chiang, M.D., wherein he noted Claimant's use of the CPAP machine for only two to three hours nightly due to mild claustrophobia. (R. 19 ¶4, 337). However, despite Dr. Chiang's acknowledgment of Claimant's claustrophobia, he indicated the importance of CPAP compliance and noted CPAP mask desensitization protocol was discussed with Claimant. (R. 337). Claimant's non-compliance was again noted during a July 2006 follow-up regarding her pulmonary hypertension. (R. 20, 397). The ALJ noted also Claimant's testimony that the machine makes her feel like she is suffocating. (R. 20 ¶4). Second, Claimant's reliance on her December 2003 statement that she was unable to purchase a CPAP machine due to financial concerns is not persuasive given the subsequent documentation of CPAP use. (R. 19-20, 337-38, 397-98). Next, Claimant failed to quote Dr. Tapson's August 2004 statement in its entirety. While noting that Claimant's "height and weight are not such that we would expect obesity to be a factor in her dyspnea," Dr. Tapson advised Claimant that "she certainly needs to lose weight." (R. 229). Weight loss was also advised by physicians in June 2003 (R. 110), April 2006 (R. 344) and July 2006 (R. 398). Accordingly, the ALJ properly relied on Claimant's failure to lose weight in evaluating the credibility of her testimony.

Finally, despite the ALJ's summary of a substantial portion of Claimant's medical history, Claimant contends the ALJ failed to consider her anemia. *See* Pl.'s Mem. at 20. However, the ALJ is not required to discuss all evidence in the record. *See, e.g., Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (explaining there "is no rigid requirement that

25

the ALJ specifically refer to every piece of evidence in his decision"); *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762 n.10 (4th Cir. 1999) (ALJ need not discuss every piece of evidence in making credibility determination); *Anderson v. Bowen*, 868 F.2d 921, 924 (7th Cir. 1989) (noting "a written evaluation of every piece of testimony and submitted evidence is not required"). Rather, the ALJ must "provide [this Court] with sufficient reasoning for determining that the proper legal analysis has been conducted." *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994); *see also Coffman*, 829 F.2d at 517. Here, the ALJ's summary of Claimant's medical record "enable[s]...[this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1211.

### d. *Claimant's recitation of medications*

Finally, Claimant faults the ALJ for relying on her ability to recite from memory her extensive list of medications during her psychological evaluation while ignoring other evidence. *See* Pl.'s Mem. at 20; (R. 21, 287). In particular, Claimant contends the ALJ should have considered the following: (1) Dr. Chiang's September 2005 notation that Claimant "does have worsening memory which may be part of obstructive sleep apnea" (R. 339); (2) Claimant's failure to remember that her grandson was in the car one day in 2004 (R. 288); and (3) a notation by a Social Security interviewer indicating Claimant's difficulty in remembering (R. 65). *Id.* at 20-21.

Although Claimant may disagree with the ultimate determination made by the ALJ, the role of this Court is not to re-weigh conflicting evidence, make credibility determinations or substitute its judgment for that of the ALJ. *Craig*, 76 F.3d at 589. Yet, Claimant's argument to reevaluate her mental abilities is an appeal for the Court to impermissibly substitute its judgment

26

for that of the ALJ. It is apparent that the record contains sufficient evidence upon which the ALJ based his determination of Claimant's mental abilitie s. In particular, the finding that Claimant should be limited to performing simple, repetitive, routine tasks that require low production is supported by the opinions of state agency psychological consultants who indicated Claimant is capable of understanding and remembering simple instructions and can sustain concentration, persistence and pace for two hour periods. (R. 21, 173, 295). For the foregoing reasons, Claimant's argument on this issue is without merit.

## VI. The hypothetical posed to the VE adequately characterized Claimant's incontinence and mental impairments.

Claimant contends the hypothetical posed to the VE did not adequately reflect Claimant's incontinence and mental impairments. *See* Pl.'s Mem. at 23. In particular, Claimant contends the ALJ was required to include the limitations of "low production" and "ready access to the bathroom."[4] *Id.* For the following reasons, this Court finds Claimant's argument to be unpersuasive.

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In order to be helpful, a VE's opinion must be "in response to proper hypothetical questions which fairly set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a

---

[4] Claimant also faults the ALJ for not incorporating into her RFC determination a limitation of walking and standing on an occasional basis only. *See* Pl.'s Mem. at 24. However, the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *Ehrhart v. Sec'y, Health & Human Servs.*, 969 F.2d 534, 540 (7th Cir. 1992). The ALJ's determination that Claimant was restricted by only those limitations that are reflected in the hypothetical is supported by substantial evidence.

27

claimant's RFC for which the ALJ had sufficient evidence. *See Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005). The VE must accept as true the RFC as determined by the ALJ. *Hines v. Barnhart*, 453 F.3d 559, 566 n.5 (4th Cir. 2006).

Claimant contends the ALJ posed a hypothetical to the VE that did not properly set forth her RFC. Without citing any authority, Claimant argues the limitations of working inside in a "low stress environment" with "access to a restroom," as posed to the VE, contradict Claimant's RFC which includes "low production" work with "ready access to the bathroom." (R. 18, 441-42). However, this Court is of the opinion that these differences are not material under the circumstances. The VE testified that she was familiar with the evidence in Claimant's file and indicated that she had been present throughout Claimant's hearing testimony. Moreover, the ALJ appropriately exercised "some discretion to craft [his] hypothetical question to communicate to the vocational expert what [C]laimant [could] and [could not] do." *Fisher v. Barnhart*, 181 Fed. Appx. 359, 364 (4th Cir. 2006) (unpublished opinion). Given the VE's knowledge of Claimant's impairments and the similarity between the wording at issue, the Court finds Claimant's argument as to this issue is without merit.

## VII. The ALJ did not fail to identify and resolve conflicts between the VE's testimony and the DOT.

Lastly, Claimant contends the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT as required in Social Security Ruling 00-4p. *See* Pl.'s Mem. at 29. The ALJ's RFC finding limited Claimant to jobs requiring only simple, repetitive and routine tasks. Claimant contends this limitation equates to a General Educational Development[5]

---

[5] "General Educational Development embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, App. C § III, 1991 WL 688702.

Case 5:07-cv-00452-FL   Document 21   Filed 09/02/08   Page 28 of 33

("GED") reasoning level of 1; however, the jobs identified by the VE require reasoning levels of 2 and 3. *Id.* Accordingly, Claimant argues the ALJ was required to elicit a reasonable explanation for this conflict before relying on the VE's testimony. For the reasons set forth below, this Court finds Claimant's argument unpersuasive.

The DOT specifies the GED requirements required for each job, including the level of reasoning skills. A job rated at a reasoning level of 1 requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions," whereas a job rated at a reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT, App. C § III, 1991 WL 688702. A reasoning level of 3 is defined as the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form." *Id.*

Claimant equates the limitation to "simple, repetitive and routine tasks" found by the ALJ to simple, one- and two-step instructions of reasoning level 1, but cites no authority compelling this result. Pl.'s Mem. at 27. Claimant contends therefore that the ALJ was required to resolve the conflict between the VE's testimony that a claimant limited to simple, routine and repetitive tasks could perform certain jobs classified by the DOT at reasoning levels 2 and 3. *Id.* Defendant counters that in determining whether a claimant can perform a job, the required skill level is the relevant issue - that is, whether the job has a specific vocational preparation ("SVP") time of unskilled, semi-skilled or skilled. Def.'s Mot. for J. on the Pleadings at 19 ("Def.'s Mem."). Equating unskilled work to performing simple, routine and repetitive tasks, Defendant avers no conflict exists between the VE's testimony and the DOT. *Id.* (citing *Hall v. Harris*, 658

F.2d 260, 266 (4th Cir. 1981) ("Unskilled work denotes work which requires little or no judgment in the performance of simple duties that can be learned on the job in a short period of time.")); *see also* S.S.R. 85-15, 1985 WL 56857, at *4 (mental demands of unskilled work include the ability to understand, carry out, and remember simple instructions); *accord* S.S.R. 96-9p, 1996 WL 374185, at *9 (mental activities required by unskilled work include understanding, remembering, and carrying out simple instructions and making simple work-related decisions).

In *Meissl v. Barnhart*, the court addressed whether a person limited to work involving simple and repetitive tasks could perform a job with a reasoning level of 2. 403 F. Supp. 2d 981, 984 (C.D. Cal. 2005). The court reasoned:

> [t]he Social Security regulations separate a claimant's ability to understand and remember things and to concentrate into just two categories: "short and simple instructions" and "detailed" or "complex" instructions. 20 C.F.R. § 416.969a(c)(1) (iii); see also 20 C.F.R. part 404, subpart P, Appendix 1, Listing 12.00(C)(3)("You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks"). The DOT, on the other hand, employs a much more graduated, measured and finely tuned scale starting from the most mundane ("simple one-or two-step instructions" at level one), moving up to the most complex ("applying principles of logical or scientific thinking . . . apprehend the most abstruse classes of concepts" at level six). To equate the Social Security regulations use of the term "simple" with its use in the DOT would necessarily mean that all jobs with a reasoning level of two or higher are all encapsulated within the regulations' use of the word "detail." Such a "blunderbuss" approach is not in keeping with the finely calibrated nature in which the DOT measures a job's simplicity. Even more problematic for [claimant's] position is that she ignores the qualifier the DOT places on the term "detailed" as also being "uninvolved." This qualifier certainly calls into question any attempt to equate the Social Security regulations' use of the term "detailed" with the DOT's use of that term in the reasoning levels. Instead of simply seeking to equate the two scales based on the serendipity that they happen to employ the same word choice, a much more careful analysis is required in comparing the claimant's RFC with the DOT's reasoning scale.

*Meissl*, 403 F. Supp. 2d at 984.

The court then determined that the claimant's reasoning level was at a level 2, rather than a 1. *Id.* (citing *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that "level-two reasoning appears more consistent with plaintiff's RFC" to "simple and routine tasks")); *see Money v. Barnhart*, 91 Fed. Appx. 210, 214, 2004 WL 362291, at *3 (3d Cir. 2004) ("Working at reasoning level 2 would not contradict the mandate that he work be simple, routine and repetitive"); *see also West v. Astrue*, 2008 WL 2024963, at *7 (M.D. Ga. May 8, 2008); *Riggs v. Astrue*, 2008 WL 1927337, at *15 (W.D. Wash. Apr. 25, 2008) (citations omitted); *Miller v. Astrue*, 2008 WL 759083, at *2 (S.D. W. Va. Mar. 19, 2008) (citations omitted). The court determined further that the ALJ's limitation of claimant to perform simple, routine and repetitive tasks did not conflict with the DOT's level 2 reasoning requirement. *Meissl*, 403 F. Supp. 2d at 984-85. This Court finds the rationale applied by the court in *Meissl* convincing, and for the same reasons, holds that the RFC to perform simple, routine and repetitive tasks is consistent with a reasoning level of 2.

Social Security Ruling 00-4p provides in relevant part:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearing level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

S.S.R. 00-4p, 2000 WL 1898704, at *2.

Here, the ALJ asked the VE to advise of any conflict between her testimony and the DOT and she indicated none. (R.440). Because there was no apparent conflict between the VE's testimony and the DOT with respect to the jobs requiring a level 2 reasoning, the ALJ was not

31

required under S.S.R. 00-4p to elicit a "reasonable explanation" from the VE as to the positions containing a reasoning level of 2. *See West*, 2008 WL 2024963, at *8. Therefore, the ALJ properly found that Claimant was capable of working as a photocopy operator or office helper - jobs requiring a reasoning level of 2.

The VE testified also that Claimant could perform the job of mail clerk, a position which carries a reasoning level of 3. (R.441). Courts addressing the issue of a conflict between the VE testimony and the DOT have found that the limitation to simple and routine and repetitive tasks is inconsistent with a reasoning level of 3, and that error is committed where the ALJ relies upon the VE testimony without further explanation. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005); *see also Riggs*, 2008 WL 1927337, at *15. This Court however need not address whether error was committed. Here, even if this Court were to determine that the ALJ erred in this respect, such error is harmless considering the ALJ relied appropriately upon the VE's unconflicted testimony regarding positions with a reasoning level of 2. *See Riggs*, 2008 WL 1927337, at *20 (no step-five error where there was no inconsistency between jobs identified by the VE and adopted by the ALJ requiring level 2 reasoning and limitations to simple instructions and decisions).

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS Claimant's Motion for Judgment on the Pleadings be DENIED, Defendant's Motion for Judgment on the Pleadings be GRANTED and the final decision of the Commissioner be upheld.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 2nd day of September, 2008.

Robert B. Jones, Jr.
United States Magistrate Judge